Allen v. Sales, et al.

RUFUS K. ALLEN, Respondent, *vs.* STEPHEN SALES, AND FREDERICK W. SMITH, Appellants.

1. *Practice, civil—Correction of entries, nunc pro tunc.*—Courts have a right at a term subsequent to the one at which a judgment is rendered to correct, by an order *nunc pro tunc*, a clerical error or omission in the original entry, and it will be presumed in the absence of contrary evidence that the court exercised proper judgment in making such corrections.

2. *Judgment—Clerical omission in—Corrected at subsequent term, how—Interlineations.*—Where a clerk is ordered by the court at a subsequent term to supply a clerical omission in the record of a judgment by an entry *nunc pro tunc*, the proper course would be to enter anew in the proceedings of that term the entire judgment as corrected; and the action of the clerk in supplying the omitted part of the judgment, by an interlineation in the record of the preceding term, would be loose, irregular and reprehensible. But *semble*, that such improprieties of the clerk would not render the judgment a nullity.

3. *Sheriff's deed—Different judgments—One deed under—Consolidation of descriptions.*—A sheriff upon the sale of a certain parcel of land, against the owner of which three judgments and executions were outstanding, made a deed which united in one description the different judgments and executions, and the gross amount recovered. But the dates of the judgments and executions were correctly stated, and the names of all the parties were correctly given in the aggregate. The deed was substantially correct, and the recitals although somewhat ambiguous could mislead no one. *Held*, that the deed sufficiently conformed to the statute.

4. *Mechanic's lien—Lease-hold estate—Delivery of lease—What facts estop denial of.*—Where the owner of land stated to a house-builder that he had leased certain premises to a third party, and the builder thereafter erected a hotel on said ground, with the knowledge of the owner and without objection on his part; but on the contrary it appeared that the owner furnished said lessee with money to aid in erecting the hotel, and the lease was manifestly given with a view to such improvement; these facts, whether the lease was delivered or not, would estop the lessor from denying the delivery. And *semble*, that the fact that the owner some months after the commencement of the building, and when the lessee's responsibility became questionable, took from him a written surrender of the lease, would also estop him from asserting its non-delivery.

5. *Estoppel—Not the basis of title—May be used in rebuttal by plaintiff, when.*—*Semble*, that an estoppel *in pais* can never form the basis of a title on which ejectment will lie. But *held*, that in ejectment founded on a sheriff's deed which conveyed a certain lease-hold estate as that of defendant in the execution, where the owner of the land sets up as a defense the non-delivery of the lease, such defense may be rebutted by proof of acts on the part of the owner constituting estoppel *in pais*. In such case the claim of estoppel is used defensively and not as the creation of a title.

6. *Mechanics' liens—Judgment on—Proceedings anterior to, cannot be inquired into collaterally.*—A judgment in a mechanic's lien suit raises the presumption, which cannot be collaterally refuted, that the suit was commenced within ninety days after the filing of the lien; and that the lien was filed in time; and such judgment can be attacked in a collateral proceeding only by showing a want of jurisdiction in the court where the judgment was rendered.

7. *Mechanic's lien—Judgment relates back—Stat., Constr. of.*—Under the statute (Wagn. Stat., 907, § 7,) when a mechanic's lien is consummated by a judgment, that judgment relates back to the commencement of the building, and an intermediate transfer or surrender of the title cannot destroy or affect the lien of the holder.

*Appeal from Buchanan Common Pleas.*

*Loan & VanWaters*, for Appellants.

I. The interlineations were not part of the June Term judgments and were void. Hence the special executions directing sale of the leasehold were also void.

II. There was no proof of the filing of the liens or commencement of the suits which resulted in the judgment.

III. The sheriff's deed should have been excluded. It recited three judgments and three executions, when it was shown that no such judgments or executions ever issued.

IV. Estoppel *in pais* will not support ejectment.

V. Long prior to the judgments Cowan had surrendered his lease to Smith. (Fitzgerald vs. Hayward, 50 Mo., 516.) The judgments, if valid, were liens only from their date.

*Hill & Carter*, for Respondent.

I. The execution sale to Smith could not be attacked collaterally in this suit. (Durham vs. Heaton, 28 Ill., 264; Winston vs. Affalter, 49 Mo., 263; Wales vs. Bogne, 31 Ill., 464; Bonsal vs. Isett, 14 Iowa, 309; Draper vs. Bryson, 17 Mo., 71; Hendrickson's Admr. vs. St. L. & I. M. R. R., 34 Mo., 188; Lawrence vs. Speed, 2 Bibb., 401; Webber vs. Cox, 6 Monr., 110; Landes vs. Perkins, 12 Mo., 260–1.)

II. The sheriff's deed contains all necessary statutory recitals to pass title, and is evidence of the facts recited. (Wagn. Stat., 612, § 54; McCormick vs. Fitzmorris, 39 Mo., 24; Bank, etc. vs. Harrison, 39 Mo., 433; Samuels vs. Shelton, 48 Mo., 444.)

III. The judgments were valid till set aside in a direct proceeding. (Swiggart vs. Harber, 4 Scam. Ill., 364.)

IV. Smith did not pretend to buy back the lease till after the liens had attached and the building was fully completed.

V. The judgments dated back to the date of commencing the improvements (Wagn. Stat., 109, § 7), and would hold the unexpired leasehold. (Wagn. Stat., 908–9, § 4 ; Page vs. Hill, 11 Mo., 149 ; DuBois, Admr. vs. Wilson, 21 Mo., 213.)

VI. Smith admitted the execution of the lease, and that he told Allen before the latter commenced building, that he had leased the lot to Cowan. He interposed no objection to the work going on, hence he is estopped from denying Cowan's tenancy. (See Lindell vs. McLaughlin, 30 Mo., 28 ; Newman vs. Hook, 27 Mo., 207 ; Dezell vs. O'Dell, 3 Hill., 219 ; Taylor vs. Zepp, 14 Mo., 482 ; Blair vs. Smith, 16 Mo., 273 ; Chouteau vs. Goddin, 39 Mo., 250 ; Bunce vs. Beck, 43 Mo., 266 ; 46 Mo., 327 ; Rutherford vs. Tracy, 48 Mo., 325.)

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment to recover a leasehold property in the City of St. Joseph. The plaintiff's title was derived from certain judgments, executions, and a sheriff's deed. There were three judgments all rendered at the June term 1871, one in favor of James M. Bedbury, and George Zettner vs. Samuel F. Cowan, for $1271.32; one in favor of Rufus K. Allen vs. Cowan, for $3110.54; and a third in favor of Francis M. Scott vs. Cowan, $185. These judgments were all to the effect, that they were to be levied of the goods and chattles, lands and tenements of said defendants, and it no sufficient property could be found to satisfy them, to be levied on the property of said defendant charged with the lien of the plaintiff, and described as follows : "A three story frame house containing about thirty rooms, known as the Missouri Valley House, and used as a hotel, and situated and erected on lot No. 8, block No. 8, in Smith's addition to the City of St. Joseph, County of Buchanan, State of Missouri, and also the unexpired leasehold term of said defendant,

in and to said lot and real estate," and a special execution was ordered.

These judgments were objected to by defendants on the ground, that on the face of the entries the words, "and also the unexpired leasehold term of said defendant in and to said lot and real estate," were interlined in the record; and it appeared further upon the examination of a witness, that the record of these judgments at the June term, did not have these interlineations, and that they were subsequently made by an employee of the clerk, at the request of a lawyer, who said the judge or court had so ordered.

It appears from the testimony of the clerk that this change in the judgment of the June term 1871, was made by order of the court, and on the motion of the plaintiff. It seems that subsequently to the June term, execution then had been issued on the judgments as they then stood on the record, and had been levied and returns made by the sheriff; but the plaintiff at the August term succeeding, moved to quash these executions and to correct the judgments, so that they should embrace the unexpired lease of defendant on the lot on which the building had been erected, in accordance with the 4th section of the mechanic's lien law. This motion was sustained, the first executions were quashed, and the record of the judgment so amended as to make the judgments embrace the unexpired term of the lease. The amendment was made by interlineation and by a clerk employed in the office to make up the books, and it was made at the August term.

The executions read in evidence by the plaintiff were regular, and need not be recited.

Objections were made to the sheriff's deed. The part objected to reads thus: "Whereas on the 7th day of June, 1871, three judgments were rendered and entered in the Circuit Court within and for the county of Buchanan and State of Missouri, and in favor of Francis M. Scott, Rufus K. Allen, James M. Bedbury and John Zettner, and against Samuel F. Cowan, for forty-five hundred and ninety-six dollars, and eighty-six cents, for their demand; and also

for the further sum of six dollars and ninety cents, which to the said Francis M. Scott, Rufus K. Allen, James M. Bedbury and John Zettner, was adjudged for their costs and charges in that behalf expended, as appeared of record in said Circuit Court; and whereas afterwards, to-wit; on the 14th day of Sept., 1871, three special executions, were issued from the office of the clerk of said court, in favor of the said Francis M. Scott, Rufus K. Allen, James M. Bedbury and John Zettner, and against the said Samuel F. Cowan, upon the said judgments, dated the 7th day of June, 1871, directed to the said sheriff of the county of Buchanan, and to me the said sheriff delivered; by virtue of which said writs or special executions, I as sheriff, as aforesaid, was directed and commanded to sell all the right, title, interest, claim, estate and property, of the said Samuel F. Cowan, of, in and to the following described real estate, situated and being in said county, to-wit, and charged with the liens of the said Francis M. Scott, Rufus K. Allen, James Bedbury and John Zettner, a three story hotel building, erected on lot 8, in block 8, in Smith's addition to the City of St. Joseph, known as the Missouri Valley House, and also the unexpired leasehold term of the said Samuel F. Cowan, of in and to said lot on which said building is situated, and whereas, &c." It appears from the evidence of the clerk, to which no objections were made, that the liens in these cases were filed Jany. 9th, 1871; and the petitions on them Jany. 12th, 1871.

The plaintiff claimed title under the judgments, executions and sheriff's deed above stated.

The ejectment suit was originally against Sales, but Smith the owner of the lot, was at his instance made a defendant. The defendant Smith had executed a lease to Cowan, for 10 years from May 1st, 1870; whether this lease was ever delivered to Cowan, is a disputed question of facts, concerning which there was evidence on both sides.

However this may be, it seems admitted, that about this time in April or May, 1870, Allen the plaintiff, who was a house-builder, made a contract with Cowan, for the erection

of this hotel building, and proceeded in connection with other contractors to furnish the materials and put up the building during the summer and fall of that year. The suits of Allen vs. Cowan, Scott vs. Cowan, Bedbury & Zettner vs. Cowan, were based on the liens thus acquired, and were commenced in January, 1871. Anterior to these suits, on the 27th of Sept. 1870, prior to the completion of the building, Cowan, by a writing indorsed on his lease from Smith, surrendered said lease and all his rights under it to Smith, in consideration of $2,300, which was the principal and interest of the money Smith had advanced to or procured for Cowan when the lease was executed, in order to enable Cowan to procure the erection of the hotel. There was evidence concerning a lease from Cowan to Sales, (the defendant) and of Sales attorning subsequently to Smith after the surrender of Cowan's lease from Smith, but the questions of law presented by the case, and which alone we propose to consider, do not require any detailed statement of this and a variety of other oral testimony.

The court instructed the jury: 1st. If the jury believe from the evidence that the lease from F. W. Smith to Sam. F. Cowan, for lot 8, in block 8, in Smith's addition to the City of St. Joseph, was duly delivered to said Cowan, or that said Smith told plaintiff that he had leased said lot to Cowan for a term of 10 years, and that plaintiff, relying on such statement, thereafter, under contract with said Cowan, erected the Missouri Valley House on said lot with the knowledge of Smith, and without objection on the part of said Smith, and that defendant Sales went into possession of said premises as the tenant of said Cowan ; that the said lease by the defendant Smith to the said Cowan, for ten years, together with the judgments, executions, reports of sale and sheriff's deed of said property, read in evidence, *prima facie* entitle plaintiff to a judgment in this action against the defendants for the possession of said lot, and the building thereon for the unexpired term of said lease.

2nd. If the defendant Smith told plaintiff, that he had

leased lot 8, in block 8, in Smith's addition to the City of St. Joseph, to Samuel F. Cowan for 10 years, and the plaintiff, relying on such statement, thereafter, under contract with said Cowan, erected the Missouri Valley House on said lot, with the knowledge of said Smith and without objection on his part, plaintiff is not bound by any stipulations between said Smith and Cowan in relation to said lease, not contained in the written lease itself, unless such stipulations were brought to the knowledge of plaintiff before he built said house.

3rd. If the jury find for the plaintiff, they will further find the monthly value of the rents from the date of the sheriff's deed read in evidence, and will find against defendant Smith, the amount of rents which they believe from the evidence he has received from the defendant Sales, and which accrued after the date of said deed; and they will find against defendant Sales, the balance of the accruing rents from the date of said deed, to the present time.

Ten instructions were asked by the defendant, and all of them refused. It is unnecessary to repeat them because they merely reiterate in another form the points raised in the course of the trial in regard to the judgments, sheriff's deed, interlineations of the judgments, and also object to the regularity of the proceedings in the cases on which judgments were rendered, under which plaintiff bought; and deny that there was any evidence of the date of the liens or the date of the petitions on them. There was a verdict and judgment for plaintiff, and the case is brought here by appeal.

The first question in this case relates to the validity of the plaintiff's title acquired under the judgments obtained against Cowan, in June, 1870, and the executions on them and sheriff's deed to plaintiff. The two principal objections to the title are, that the judgments as interlined, and upon which the executions under which plaintiff bought were issued, were nullities, and that the sheriff's deed upon the sales under these executions, was invalid to convey any title.

That a court has a right, at a term subsequent to one at

which a judgment is rendered, to correct by an order *nunc pro tunc*, a clerical error or omission in the original entry, is indisputable. The error, whether of commission or omission, must appear from the record of the proceedings in which the entry of judgment is made. The record of the proceedings in the cases of Allen vs. Cowan and Scott vs. Cowan, &c., was not in evidence, the plaintiffs having merely proved the date of the liens and the date of the filing of the petitions, and the defendants not having offered any evidence in regard to them. Upon what property the petitions in these cases asked for an enforcement of the liens filed, we have no means of knowing. Every presumption is in favor of the action of the court that ordered the amendment, and we must suppose there was on the record whatever might be necessary to justify such amendment.

A proper mode of complying with this order of the court at the August term to supply the omission in the judgment rendered at the June term, was undoubtedly to enter anew in the proceedings of the August term, the entire judgment as corrected—and it was a loose, irregular and reprehensible act of the clerk in supplying the omitted part of the judgment by an interlineation in the record of the June term. But we are not prepared to hold that such improprieties on the part of the clerk will render the judgments nullities, and if it sufficiently appears that there was a *nunc pro tunc* order requiring the correction to be made, to reverse the judgment on such a ground, would be merely to put the parties to the expense and delay of procuring a second order which of course could be made now as well as at the time it was made.

But the main objection to this title, and a more serious one than that which we have just examined, is the singular blunder in the sheriff's deed, describing the judgments and executions. The sheriff seems to have consolidated the three judgments and the three executions into one, and the amount of damages and costs in the three cases. The dates of the judgments and the executions are correctly given, and the sums of money, both in regard to damages and costs are cor-

rectly stated, and the names of all of the parties, both plaintiffs and defendants in each of the three judgments are correctly given in the aggregate. These judgments and executions are all in evidence, and by an examination of them, it is easy to see that the deed of the sheriff is substantially correct in its recitals, and could mislead no one. There is undoubtedly some ambiguity in these recitals, occasioned by the officer undertaking to abbreviate the deed, and attempting to embrace three judgments and three executions in one general description, and failing to express this intention in appropriate terms, and adopting a manner that does not distinctly show who was plaintiff in each particular case. There is no doubt the deed could now be corrected if necessary, but as we think it was a substantial compliance with the statute, we are not disposed to put the parties to this expense.

Conceding the title of plaintiff to be *prima facia* good and co-extensive with the property conveyed by the sheriff's deed, it remains to inquire how far this affected the lot and house admitted to be owned in fee by the defendant Smith, and temporarily leased by Smith's lessee to the defendant, Sales. The delivery of the lease from Smith to Cowan—the defendant in these executions—is denied, and there is evidence on both sides in regard to this. We have not detailed the evidence, because it was undoubtedly proved, and the verdict of the jury under the instructions of the court so finds, that Smith told the plaintiff, upon inquiry, in April, 1870, that he had leased the lot to Cowan for ten years; and it clearly appears that Smith, who was the owner of the lot, was living in the city when the hotel was in process of building by plaintiff, and never made any objection. On the contrary, Smith advanced $2,000 to Cowan to aid him in the erection of this building, and the lease was doubtless with a view to such improvement on the lot. These facts, whether the lease was delivered or not, constituted a clear case of estoppel *in pais*. Indeed, the fact that Smith, some months after the commencement of the building and when Cowan's responsibility became questionable, took from him a written surrender of the lease, would

seem also to estop Smith from asserting its non-delivery. If never delivered, its formal surrender in writing would appear to have been unnecessary.

But it is urged that an estoppel *in pais*, though very good as a matter of defense, could never form the basis of a title on which an ejectment would lie. This may be conceded. The title on which this suit in ejectment was based, consisted of the judgment, sale under execution and the sheriff's deed. This deed conveyed, or professed to convey, the unexpired term of this lease. The defense is, that the lease was never made or consummated.

To rebut this defense, an estoppel *in pais* is offered. The estoppel is used defensively, not as a creation of title, and we think the first instruction given for the plaintiff was therefore correct.

As to the facts recited in the instruction, and appearing in the evidence, constituting an estoppel, it is hardly necessary to recite cases to show that the instruction was right in assuming that such facts would constitute an estoppel. It is about as strong a case of estoppel as could be well conceived. The plaintiff builds a costly edifice on a lot which, before the building was commenced he is informed by the owner, had been leased for ten years to the person with whom the plaintiff thereupon contracts, and the owner stands by and sees the building going up and never says a word to the contrary. In point of fact, the plaintiff was not misinformed, as such a lease was undoubtedly executed and acknowledged, and, it is to be inferred, was consummated by delivery, since otherwise its subsequent surrender would have been unnecessary. But whether it was or not, the plaintiff was led to believe it was, by the owner of the lot, and upon the faith of such representations expended large amounts of money in the erection of a building, under the immediate eye of the owner, who waited to take back a surrender of the lease, until the building was nearly or quite finished. Under such circumstances, the owner would not be allowed to say, that his statements to the builder were false. If false, he cannot be allowed,

after money has been expended on the faith of their truth, to assert their falsehood.

The instructions asked by the defendant in the case are to the effect, that it devolved on the plaintiff to show that the proceedings in the cases of enforcing the liens were regular and conformed to the statute relating to such liens; that the suits must have been commenced within ninety days after the liens were filed; that there was no evidence on the part of plaintiff as to the time when the suits were commenced—that the time of filing the liens was not proved—that there was no proof that they were filed in six months after the indebtedness accrued. It is sufficient to say in regard to these instructions, that the judgment offered in evidence raised the presumption, which collaterally could not be refuted, that the proceedings were in conformity to law, and which could only be attacked by showing a want of jurisdiction in the court where the judgment was rendered.

It was said that defendant, Sales, was not served with notice—but the record as to this point was not offered in evidence—and it appeared that Smith was made defendant on his own motion.

The only remaining point raised by the instruction asked by defendant not heretofore noticed, is, that before the date of the judgments forming the basis of plaintiff's title, the lease to Cowan was surrendered, and therefore, the judgment would not reach further than the building erected on the lot. But the 7th Sec. of the 3rd Art. of the law concerning Liens (Wagn. Stat., 909), provides that: "the lien for work and materials as aforesaid, shall be preferred to all other incumbrances which may be attached to or upon such buildings, bridges or other improvements on the ground, or either of them, subsequent to the commencement of such buildings or improvements." In other words, when the lien is consummated by a judgment, that judgment relates back to the commencement of the building, and an intermediate transfer or surrender of the title could not destroy or affect the lien of the builder.

The judgment is affirmed. The other judges concur.