# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2807

_____

Christopher Sandknop

*Plaintiff - Appellant*

v.

Missouri Department of Corrections

*Defendant*

Brian O'Connell, Individually and Official Capacity

*Defendant - Appellee*

Missouri Department of Corrections, Board of Probation and Parole

*Defendant*

Aaron Jarrett, Individually and Official Capacity

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: April 16, 2019
Filed: August 5, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Christopher Sandknop filed a *pro se* § 1983 claim against the Missouri Department of Corrections ("MDOC"), the warden of the Ozark Correctional Center ("OCC"), and a former probation and parole officer at the OCC, alleging that he was unlawfully deprived of his liberty as a result of statements made by the former probation and parole officer to a local state court. The district court[1] concluded that the warden and the officer were entitled to absolute and qualified immunity and dismissed Sandknop's suit.[2] Sandknop now appeals with the assistance of *pro bono* counsel. We affirm.

## I.    Background

On July 12, 2013, Christopher Sandknop pled guilty to driving while intoxicated. Sandknop had a number of prior convictions and was considered a "chronic offender" under section 577.001(5) of the Missouri Statutes Annotated. The state circuit judge sentenced Sandknop to a mandatory ten-year term of imprisonment. Notwithstanding the mandatory term, under Missouri law the court was authorized to suspend the sentence of a chronic offender to allow the offender to participate in a custodial substance abuse treatment program. See Mo. Stat. Ann. § 217.362(2).

_____

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

[2]The court had previously dismissed the MDOC on the basis that the plaintiff could not include state entities in a § 1983 suit. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 65 (1989).

Armed with this authority, the state court suspended Sandknop's sentence and ordered him to complete the substance abuse program.

A series of Missouri cases have addressed whether and to what extent offenders who successfully complete the substance abuse program are entitled to release on probation. The abuse treatment program created by the MDOC lasts for twelve months, even though the statute at issue allows the court to impose a sentence requiring the defendant to participate in an "institutional drug or alcohol treatment for a period of at least twelve and no more than twenty-four months, as well as a term of incarceration." Id. The statute further provides that when the defendant completes the program "the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. If the court determines that probation is not appropriate the court may order the execution of the offender's sentence." Id. at § 217.362(3). Despite the language of the statute, some trial courts in Missouri concluded that they were authorized to "retain jurisdiction" and order that an inmate could be held up to the twenty-four month maximum treatment period found in section 217.362(2). See Salm v. Mennemeyer, 423 S.W.3d 319, 320 (Mo. App. 2014) (describing trial court order purporting to retain jurisdiction under that section). The Missouri Court of Appeals held in Salm that section 217.362 did not authorize that approach. Id.

Sandknop completed the substance abuse treatment program after Salm was decided and attempted to secure his release. In response, the trial court entered an order "retaining jurisdiction" over Sandknop under the same theory that was ruled impermissible in Salm. Sandknop alleges that the court issued the order because a probation and parole officer at the OCC informed the court in an *ex parte* communication that it was entitled to do so, even though the opinion in Salm had warned the MDOC that its "court report investigations should no longer advise that section 217.362 allows trial courts to retain jurisdiction up to twenty-four months." Id. at 321 n.4.

Pursuant to the state court's order, Sandknop was held for several additional months at the OCC after completing his treatment program. Sandknop sought a writ of mandamus compelling his release. The MDOC asked the Missouri Court of Appeals not to issue the writ due to a separate statutory provision stating that "[n]o chronic offender shall be eligible for parole or probation until he or she has served a minimum of two years imprisonment." See Mo. Stat. Ann. § 577.023.6(4) (2012) (recodified at Mo. Stat. Ann. § 577.010.6(5)). The court of appeals noted that the trial court had not purported to exercise jurisdiction under section 577.023, declined to address the interplay between the two provisions, and issued a writ compelling the trial court to comply with section 217.362. See Sandknop v. Goldman, 450 S.W.3d 499, 503 (Mo. Ct. App. 2014).

On remand the trial court amended its previous order to add a reference to section 577.023. The Supreme Court of Missouri later explained that a defendant is only eligible for release pursuant to section 217.362(3) after the defendant has served the two-year minimum specified in section 577.023. See State ex rel. Hodges v. Asel, 460 S.W.3d 926, 929 (Mo. banc 2015).

Sandknop brought this § 1983 suit alleging that he was unconstitutionally deprived of his liberty because of the officer's *ex parte* communication to the state court stating that section 217.362 permitted Sandknop's continued detention. He also brought state-law claims of intentional infliction of emotional distress and false imprisonment. His § 1983 claims were dismissed on absolute and qualified immunity grounds. The district court declined to exercise supplemental jurisdiction over the remaining state-law claims. Sandknop appeals.

## II.    Discussion

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide "enough facts to state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We construe *pro se* complaints "liberally," but the complaint must still allege sufficient facts to support the claims advanced. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). We review *de novo* a district court's grant of dismissal based on absolute immunity or qualified immunity. See Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015); Buser v. Raymond, 476 F.3d 565, 568 (8th Cir. 2007). Dismissing a case on a 12(b)(6) motion for reasons of qualified immunity is appropriate when the "immunity is established on the face of the complaint." Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013) (citing Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)).

Sandknop's action is appropriately subject to 12(b)(6) dismissal because qualified immunity is established on the face of the complaint for each of the claims advanced against each defendant. An official is entitled to the affirmative defense of qualified immunity "unless the evidence establishes (1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful." Id. (citing Bernini v. City of St. Paul, 665 F.3d 997, 1002 (8th Cir. 2012)). Sandknop has not directed us to any case holding that an official violates a defendant's constitutional rights by making an erroneous statement of law to a state court.[3] See De La Rosa v. White, 852 F.3d 740, 745 (8th Cir. 2017) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)) (stating that for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate"). If the state court erred in its legal determinations because

_____

[3]The cases Sandknop cites to try to support his claim are inapposite. See, e.g., Davis v. Hall, 375 F.3d 703, 716 (8th Cir. 2004) (denying qualified immunity where officials continued to detain an inmate despite a court order requiring his release); United States v. Hessman, 369 F.3d 1016, 1020 (8th Cir. 2004) (explaining that the Leon good-faith exception does not apply when an officer misleads a judge as to the *facts* supporting the issuance of a warrant).

it improvidently relied on a misreading of the law, the defendant's recourse was to appeal or seek a writ of mandamus.

Sandknop's complaint does not contain sufficient allegations to overcome qualified immunity with regard to any statement the probation officer made to the state court before the court issued the order requiring Sandknop to be detained further. Nor does it provide any other reason that either the warden or the probation officer violated a clearly established constitutional right.[4]

## III.    Conclusion

We affirm.

_____

---

[4]We note that Sandknop was required to be detained for a minimum of two years under section 577.023, so that detaining him during that period did not violate any clearly established constitutional right. See State ex rel. Hodges, 460 S.W.3d at 928 ("By providing that no chronic offender can be released on probation or parole before serving two years imprisonment, section 577.023.6(4) specifically accommodates those situations in which a chronic offender successfully completes the program and is eligible for 'probationary release' pursuant to section 217.362.3.").